The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Good morning again. Our only case to be argued this morning is 2019-2357 Bank of America v. United States. Ms. Bringer, I want to ask you, if the District Court has jurisdiction over refunds, then why not interest on the overpayment that one can get with a refund? Isn't this like the Nassau tour idea where you know something by its friends? Why doesn't 1346 apply? Your Honor, the focus of our argument is the plain text of Section 1346A1, which is limited to claims for refund of sums paid to the government as the Second Circuit held in FISA. Now Congress has carved out a special provision in Section 2411 of the Internal Revenue Code to allow courts to award overpayment interest when they are also entering judgment for a refund of the tax. But Congress has not chosen to carve out an exception for standalone overpayment interest claims. Those claims as this Court has held and its predecessor Court has held or observed are governed instead by the Tucker Act and the schemes surrounding the Tucker Act. Now the choice of why to draw that line there is left to Congress. But what's clear in the entire history of the statute is that Congress had a special concern for taxpayers who were seeking a refund of tax that they had overpaid. And that the language of the statute makes that clear. It's undisputed that overpayment interest is not a tax or a penalty and that it was not wrongfully collected. The Bank of America asserts that the overpayment interest claims seek any sum alleged to have been excessive. Ms. Bringer. But it is not... Ms. Bringer, excuse me. This is Judge Lynn. Yes. If Section 1346 only covers refunds, namely amounts wrongfully collected, what distinct meaning do you attribute to the word excessive? Your Honor, there is a distinction between amounts that are excessive and amounts that are wrongfully collected. Importantly, the statute doesn't just say excessive or collected. It says excessive or wrongfully collected. Both types of funds must have been paid to the government. We give an example in our reply brief at pages 9 to 10 where a taxpayer voluntarily pays too much underpayment interest. The sum was excessive. They paid too much, but it wasn't wrongfully collected. On the other hand, as the IRS forcefully collects the correct amount of underpayment interest that's not excessive, but does so after the limitations period on collection is run, that sum was not excessive. It was the correct amount, but it was wrongfully collected. And this court made that distinction itself in the Roberts case in talking about this statutory provision at page 106 of that opinion. So our interpretation does preserve that distinction between those two concepts. Critically, Bank of America... Thank you. Thank you, Your Honor. Critically, Bank of America has not alleged that the overpayment interest has been excessive, which is what Section 1346A1 requires. Instead, in its complaint, Bank of America alleges that the overpayment interest has been insufficient by more than $48 million. In FISA, the Second Circuit explains that the use of the present perfect tense, the court got really into the grammar of the provision. And the language of the statute indicates that the sum in the statute must have been excessive or wrongfully collected at some point in the past. And here, that's simply not the case. The FISA analysis is in Supreme Court's observation in the Williams case in 1995, that Section 1346A1 is a post-deprivation remedy that's available only if the taxpayer has paid the government in full. That's referring, of course, before a full payment rule. And that description simply doesn't fit Bank of America's standalone overpayment interest claims. Instead, it seeks additional funds from the government, not a return of funds of which it has been deprived. And that kind of a claim is brought under the general rule in the Tucker Act that where a party has a monetary claim against the government that exceeds $10,000, such a claim may be brought only in the Court of Federal Claims. Counsel, what is the relevance of the Proudfoot case? So, the Proudfoot case in 1972, this court's predecessor was actually an underpayment interest case. It's a refund case. But this court's predecessor, referring to the Barnes case in 1956, observed that overpayment interest is paid not as a refund, but simply because the government has had the use of money found under the taxpayer. And then the court goes on to explain that the six-year statute of limitations under the Tucker Act applies to overpayment interest claims, but a different scheme that regarding tax refund claims applies to the statute of limitations for refund claims. So, in Barnes and Alexander Proudfoot, and then more recently in the General Electric case, the court again and again has held that the six-year statute of limitations that applies to Tucker Act claims applies to standalone claims for overpayment interest. The Court of Federal Claims has, of course, similarly held that that's the case in a series of cases. Bank of America simply doesn't address any of these cases. It does not cite Barnes, Alexander Proudfoot, or General Electric, or explain how its position that standalone overpayment interest claims are governed by Section 1346A1 can be harmonized with this court's observations that those claims are instead brought under the Tucker Act. Now, Section 1346A1 is a waiver of sovereign immunity. The parties agree on that. And to the extent that the text of it was, but to the extent that it's not, any ambiguity in that statute must be determined in favor of sovereign immunity. In fact, as long as it is plausible to interpret Section 1346A1 as preserving immunity, it should be interpreted that way. And the opinion in FISA shows at least that it is plausible to interpret Section 1346A1 as encompassing only refund claims and not overpayment interest claims. And the plausibility of that analysis is supported by the fact that the only district courts to decide this issue after FISA have, in fact, adopted its reasoning. Now, in addition to the plain text argument, the statutory structure that's intertwined with Section 1346A1 reinforces our plain text interpretation of that statute. Section 1346A1 is part of an integrated statutory scheme that governs claims for tax refunds. And the second opinion of the Supreme Court in the Flora cases, the court observed that the provision is the keystone and a carefully articulated and quite complicated structure of tax laws. And in our including Section 7422A, from which the key text that's at issue in this appeal was copied, that provision requires that an administrative claim for refund is filed before filing a suit seeking any sum alleged to have been excessive. But in addition to 7422A, Section 6511, which sets the deadline for administrative refund claims, and Section 6532, which sets the time for filing a lawsuit after an administrative refund claim, also limit the waiver of sovereign immunity in Section 1346A1. One more addition to that list is the Flora full payment rule. In the Flora cases, the Supreme Court was specifically considering the any sum phrase that's at issue in this appeal. And the court held that even suing under the any sum provision, full payment of the tax liability was still required. But looking at how those statutes interact, and the fact that they do narrow the waiver of sovereign immunity, it's simply not possible to fit overpayment interest claims into that statutory structure. The court held in strategic housing, following those Supreme Court precedents, that 7422A requires exhausting administrative refund claim remedies before filing a suit in federal court to recover any internal revenue, tax penalty, or sum. And so again, and again, courts have made clear that those restrictions apply to lawsuits brought under 1346A1. The Bank of America again ignored these cases in its answering brief. It does not cite DALM, where the Supreme Court notably said that 1346A1 and 7422A must be read in conformity with each other. Instead, Bank of America contends, and the district court concluded, that those two statutes must be interpreted to mean different things. And it simply cannot be squared with this litany of cases, most notably including DALM, where the Supreme Court said they must be interpreted together. The Bank of America can't, excuse me, as a practical matter, meet any of these prerequisites for the overpayment interest claims. Bank of America cannot file an administrative refund claim, excuse me, and it also can't meet the floor full payment rule. Now, Bank of America spends a lot of time on the legislative history behind section 1346A1. It's our position that there's no need to resort to legislative history. The text of the statute is clear. It does not cover overpayment interest claims. And even if legislative history could somehow shed some light on the meaning of the plain text in section 1346A1, legislative history cannot provide a waiver of sovereign immunity. That waiver must be unambiguous in the plain text of the statute. The courts have repeatedly observed that the increased access to district court remedies for tax refund claims. In WIODAC, the 10th Circuit observed that that legislative history confirms that the only substantive right that section 1346A1 grants is the right to sue for a refund of taxes. In our view, legislative history simply has no role to play in this analysis. But the relevant legislative history does support the government's position. Does the court have any specific questions about legislative history that it would like for me to address? Not from Judge Walla. Hearing none. Not from Judge Lynn. You may proceed. Thank you. Ms. Bringer, I apologize for not giving you a minute of free time. As promised, we had a little glitch here. But I think as it turned out, you did not have to suffer from the temporal equivalent of an underpayment. So we've worked out all right. Mr. Bishop. Thank you, Your Honor. And may it please the court. I'll quickly get to the statutory text, which is obviously controlling here. But I do want to point out what it is that the government's asking for. It's asking for one small sliver of taxpayer suits to be compliant to the Court of Appeals. But for a century, Congress has been expanding taxpayer rights to litigate tax cases close to home, whether that's in the district court or in the tax court. It's been eliminating formalistic differences so that taxpayers can avoid the cost and inconvenience of litigating in D.C. There's no dispute that suits to recover taxes, to recover penalties, to recover standalone underpayment interest, even to recover overpayment interest when the claim is brought along with the be brought in district court under 1346. So the only claim left out is for overpayment interest by itself. And the troubling result of the government's theory is clearing this case. Interest netting under 6611D proceeds by either decreasing underpayment or increasing overpayment interest. There hasn't been any excessive sum here that's been withheld. It's an interest on an overpayment, which is almost as a matter of grace. No, Your Honor. An excessive sum is an amount in the hands of the IRS that properly belongs to the taxpayer and that isn't a tax or a penalty. And because Code Section 6611 provides that the time value of the money in the hands of the IRS belongs to the taxpayer, any amount of interest that the service retains is excessive. What about the Proudfoot case? Proudfoot, Your Honor, is a deficiency interest tax case, as Ms. Bringer said, and it properly holds that deficiency interest underpayment interest is, quote, a constituent part of the tax itself. And so it belongs under a claim for underpayment interest belongs under 1346A1 any tax provision. The case did not address a standalone claim for underpayment interest, which under 6601E1 is statutorily part of the tax. Just to go back to my point here, in this particular case, nearly $100 million of our netting claims are ones in which we seek to decrease underpayment interest. And there's no dispute. The government doesn't dispute that those cases would stay in district court. Only the claims in which we seek to net by increasing overpayment interest and seek standalone overpayment interest will move to the Court of Federal Claims. So you'd have these closely related cases being litigated in different courts. It's wasteful, it's inefficient. But the most important thing that applies in the face of Congress's pro-taxpayer goals over the course of a century of consistently increasing the opportunities of the taxpayer to litigate close to home, either in tax court or in district court. Mr. Bishop, you could file this claim in the Court of Federal Claims, though. Yes, I mean, 1346A1 allows that or... You're arguing over venue, not whether you could collect or not. Yes, we believe that 1346A1, consistent with Congress's goal, pro-taxpayer goal of allowing taxpayers to litigate close to home, permits us to file suit in Charlotte, North Carolina, where Bank of America is located, and not to have to go to the Court of Federal Claims. That was the whole point of the passage of 1346A1 in 1921, and of its expansion over the years. Just as tax court travels around the country to be close to the taxpayer's home, 1346A1 allows litigation close to home, too. So we have no embarrassment at all in saying that we... The Claims Court also travels around the country. We think that 1346A1, on its face, allows us to choose to litigate in district court, Your Honor, and that we fall clearly within the excessive sum language. Mr. Bishop, this is Judge Wallach. I have a few questions. Let's start with this. On page 50 of the red brief, Bank of America asserts that the two district courts that followed the Second Circuit's FISA opinion did so, quote, with little additional analysis. And, certainly, you said that that makes them less valuable. Am I correct? No, Your Honor, there's clearly a circuit split here. The Sixth Circuit in Scripps decided... Mr. Bishop, that wasn't my question. And I'm asking that question for a reason. You complain that the two district courts that followed FISA did so with little additional analysis. And, apparently, you think that we ignore them because of that. Well, we're in a court of appeals, Your Honor, and neither of those cases is binding on this court. Neither is FISA, nor is Scripps. The standard in this court is... Okay, you've got... Mr. Bishop, you're going to avoid answering my question, so let me ask the next question. Isn't the lack of additional analysis the problem with the district court's decision below that's on appeal here? I don't think that this court needs to pass closely the district court cases. You have two court of appeals cases, Scripps and FISA, that do engage in very in-depth analysis and reach opposite conclusions here. This court has not decided this issue before, and... So, Mr. Bishop, Mr. Bishop, what you're saying to us is that we don't need to parse closely the opinion below which we're being asked to reverse. Is that correct? The review in this court is de novo, Your Honor. We ask the court to look at the statutory language, look at the history, and take account of the fact that there is a second split, but it hasn't... This court has not addressed this issue before, and rule on that basis. Okay. Okay. So, I get your drift. You're not trying to defend the opinion below. Let's move over to legislative history. On page 15 of the red brief, B of A says that, quote, the associate chief counsel of the Bureau, that is in Internal Revenue, explained to the Senate that the Bureau had litigated a number of cases under the prior version of Section 1346A1 with stand-alone overpayment interest cases. But on page 31 of the gray brief, the government, although they say legislature doesn't matter, is that after the hearing, the Treasury Department sent a letter to the subcommittee, which is at 1158 in the appendix, which references no case in which a district court exercised jurisdiction under 1346A1 or its precursors over stand-alone claims for overpayment interest. They say, it thus appears the assistant chief counsel was mistaken in his apparent belief that such cases existed. Is there such a case? Was there such a case? Yes, there were four. Dresser, Max Factor, Murphy, and Guarantee Trust. And this is, I'm glad you've raised this, Your Honor. It's a very important point in this. Well, I don't know if it's very important because it's legislature, but go ahead. Well, we think it is important because what the court is hearing today from the government directly contradicts what it told Congress the last time that 1346 was amended in 1954. So, and there was a long debate at that hearing about whether the statute should be amended to make sure that it covered overpayment interest. And here's what the counsel for the committee asked the government's lawyer. Is it your opinion that under the language of the bill as it stands, a taxpayer could bring his action for the recovery of interest, which he alleges was due him on money improperly withheld. Interest due on money properly withheld. So, overpayment interest is clearly what they're talking about here. The assistant chief counsel says yes. And then there's another question. Let me cut to the chase on my line of questions here. The government contends, as I referenced, that we, quote, need not delve into the leg history because the Supreme Court has held that a statute's legislative history cannot supply a waiver of sovereign immunity. How do you overcome that Supreme Court precedent? Well, your honor, I'd refer you to the Richland case in 2008, which was a case where sovereign immunity was an issue. And what the court said, what the majority said, they're rejecting a dissenting position is this. Sovereign immunity canon is just that. It's a canon of construction. It's a tool for interpreting the law. And we have never held that it displaces the other traditional tools of statutory construction. Court said the same thing a few years later in FAA versus Cooper. Now, you know, I think we can see that legislative history by itself probably can't amount to a waiver. But we have, we believe here, text in our favor. And we believe we have a concession by the government. Mr. Bishop, this is George Laurie. I'm reading from the Pfizer opinion. By its nature, overpayment interest is not a sum that at some point in the past was either excessive or wrongfully connected. Neither was it excessive, which means exceeding the usual, proper, or normal. Excessive assumes that there exists a sum that is not excessive that may not be recovered, which is not the case here. Thus, consistent with the text in the penalty, the sum category of 1346 encompasses only previously assessed amounts of money. Why doesn't, why isn't that correct? Well, you know, as I said earlier, Your Honor, what excessive means is too much. And the way in which overpayment interest is too much is that it's still in the hands of the government. And under 6611, we are entitled to that interest. It belongs to us. Are the facts here different from those in Pfizer? Um, well, I mean, these are really a pure legal issue in both cases, Your Honor. And it's, I'd say, you know, there are, both cases are on, on all fours as to those legal issues, as was the Sixth Circuit issue in Scripps, which came out the other way. So we think Pfizer is wrong for, for many reasons. Mr. Bishop, excuse me, this is Judge Linn. I want to get back to the statutory text for a minute. Ms. Bringer, in, in the government's briefs and this morning at the argument, referred to the integrated statutory scheme, including 1346 and 7422, and cited U.S. v. DOM. That's cited both in the blue brief and in the gray brief, but it's not cited in your brief. Any, any comments you'd like to share with us on the relevance of U.S. v. DOM? Yes, Your Honor. DOM says, and we agree that 1346 and 7422 have to integrate together. And it's very important to understanding 1346, that it is different from 7422. Congress borrowed much of the language of 1346 from the predecessor to 7422, including these three operative clauses. But the two statutes have different limitations. 7422, which is referred to by this Court and the Supreme Court as the refund statute, and which has in both its title and in the body of the provision, a limitation to refunds, is, is about refunds. That language was not copied over into 1346. 1346 instead, at the end of the provision, has a different limitation, which is under the internal revenue laws. So on its face, 1346 contains not even a hint that it's limited to refund claims. And we think that those textual differences show that Congress did not intend 1346 to cover just refund actions. It applies to any claims to recover any amounts that belong to the taxpayer under the internal revenue laws, whether those were assessed or collected, or as with overpayment interest, whether they're otherwise owed to the taxpayer. All right, thank you. Thank you. Do you have a final summary comment, Bishop? Yes, I would like to draw the Court's attention to both the legislative history that we've already discussed, but also to two canons of construction that we think are compelling here. The first is the one I've just discussed, which is the comparison of 1346 to 17422, where 1346 does not include refund language. The other one is the canon that says that appraisal should not be made redundant, the anti-surplusage canon. We believe that our reading is the only reading of 1346 which complies with that anti-surplusage canon of construction. Thank you, counsel. We have your argument and your time has expired. Thank you very much. Ms. Bringer has three minutes of rebuttal time. Thank you, Your Honor. So the unambiguous plain text is the sole source for the waiver of sovereign immunity. Under Section 1346A1, as we've discussed, the standalone overpayment interest claims that are issued here simply have not alleged to have been excessive. The grammar's awkward there, but Bank of America is not alleged that those amounts have been excessive. And just looking at the plain text of the statute, those claims do not fall under it. This Court's precedent is consistent that standalone claims for overpayment interest are brought under the statute. This is Judge Lori. The statute says excessive, and this is an overpayment of interest. So doesn't excessive mean a payment over a proper amount of interest? No, Your Honor. The statute refers to any sum alleged to have been excessive. The Sixth Circuit erred in analyzing a paraphrase of the statute and looking at whether the government would retain an excessive sum, but that's not the language that Congress wrote. Congress allows people to recover any sum alleged to have been excessive. And here, Bank of America simply has not alleged that the overpayment has been excessive. In addition... They're asking for interest on an overpayment. There was an overpayment. We're talking about interest, right? Yes. They're asking for additional overpayment interest. Okay. Ms. Bringer, this is Judge Wallach. I want you to discuss whether sovereign immunity is simply a canon of statutory instruction. I would think that... That's my reading of Coke and Blackstone, but maybe I've missed something. No, Your Honor. We would not see it as being reduced to merely a canon of statutory interpretation. Although again, we think that the court can look at the plain text of the statute and stop its analysis there as the Second Circuit did in FISA. But the principles regarding interpreting a waiver of sovereign immunity are longstanding and really have not been questioned. So if there's an ambiguity in the text, and again, we don't think there is, but if there's an ambiguity, the Supreme Court has held again and again that that must be interpreted in favor of immunity. Now, Bank of America does have a remedy here. It could have brought one case in the Court of Federal Claims for all of its interest-setting claims. So we're not at all trying to foreclose their opportunity to seek a remedy. We just think that the right place to bring these overpayment interest claims is in the Court of Federal Claims, where Bank of America already has an interest-setting suit pending. For those reasons, has the FISA case held? I'm sorry, Your Honor. I didn't hear that was a beeping. Could you repeat your question? Has the FISA case held? Yes, indeed, Your Honor. We think the Second Circuit did get it right in FISA. So we ask the Court to vacate the District Court's order and to remand with instructions to transfer the overpayment interest claims to the Court of Federal Claims. Thank you to both counsel. We have your arguments in the cases submitted. Thank you very much. The Honorable Court is adjourned until tomorrow morning at 10 a.m.